IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 17-cv-02527-CMA

EUGENE ROMERO,

      Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE DENYING DISABILITY INSURANCE BENEFITS

---

This matter is before the Court on Plaintiff Eugene Romero's appeal of the

Commissioner's decision denying his claim for disability insurance benefits (DIB).  (Doc.

# 14.)  Exercising jurisdiction under 42 U.S.C. § 405(g), this Court affirms the decision

of the Administrative Law Judge (ALJ).

## I.      BACKGROUND

In May 2009, while working as an electrician, Mr. Romero sustained injuries to

his back, face, and hands in a flash explosion.  (Doc. # 10-2 at 39.)  In the ensuing

years, Mr. Romero underwent tangential excision and debridement of his hands,

bilateral skin grafts, release of scar contractures, and regular physical therapy.  (Doc. ##

10-7 at 251–323; 10-8 at 324–333; 10-9 at 344–414; 10-10 at 415–99; 10-11 at 500–76;

10-12 at 577–651.)  The pain to Mr. Romero's back appeared more gradually, primarily

affecting his lower lumbar spine; Mr. Romero underwent a L4 laminectomy in late 2012 and began physical therapy in early 2013.  (*Id.* at 46–49.)

In July 2013, as a result of these injuries, Mr. Romero applied for DIB, alleging disability beginning with the explosion in May 2009.  (*Id.* at 39.)  On August 31, 2015, following a hearing, an ALJ denied Mr. Romero's claim, ultimately finding that he was not under a "disability" as defined in Title II of the Social Security Act.  (*Id.* at 39–53.)  Mr. Romero appealed, and the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 22–26.)

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's final decision is limited in scope by 42 U.S.C. § 405(g).  "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [ALJ]."  *Trimiar*, 966 F.2d at 1329.  The district court may not reverse an ALJ simply because it may have reached a different result based on the record.  *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Instead, this Court's limited role is to determine whether the ALJ's decision is supported by substantial evidence*.  Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003); *Trimiar v. Sullivan*, 966 F.2d 1326, 1328–29 (10th Cir. 1992).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  A finding of "'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Trimiar*, 966 F.2d at 1329.  Evidence is not substantial if it is overwhelmed

by other evidence or if it is actually mere conclusion.  *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).  Moreover, the record must show the ALJ considered all the evidence, but he need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014); *Lykins v. Colvin*, 657 F. App'x 726, 727 (10th Cir. 2016)

Failure to apply the correct legal standard is also grounds for reversal.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  This Court must therefore determine whether the ALJ's action is consistent with the Social Security Act and the relevant regulations and case law.  *Ellison*, 929 F.2d at 536.

## III.    LAW

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that

> "[a]n individual shall be determined to be under a disability
> only if his physical or mental impairment or impairments are
> of such severity that he is not only unable to do his previous
> work but cannot, considering his age, education and work
> experience, engage in any other kind of substantial work
> which exists in the national economy. . . ."

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).  The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a

severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work. *See* 20 CFR 404.1512(g), 404.1560(c), 416.912(g), and 416.960(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007). A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

In conducting this evaluation, the ALJ must identify the weight accorded to the opinion of medical consultants and examiners and also explain the basis for said weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

## IV.    ANALYSIS

In this case, the ALJ proceeded through the first three steps in the sequential process. The ALJ concluded that Mr. Romero (1) had "not engaged in substantial gainful activity during the period from his alleged onset date of May 5, 2009 through his date last insured of December 31, 2013"; (2) suffered from "the following severe impairments: degenerative disc disease of the lumbar spine with neuropathy of the lower extremities and burns of the bilateral hands"; and (3) did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (Doc. # 10-2 at 41–43.)

Before addressing the fourth step, the ALJ assessed Mr. Romero's residual functional capacity (RFC) and concluded that Mr. Romero had the RFC to perform "light work as defined in 20 CFR 404.1567(b)." (*Id.* at 43.)  Light work requires occasional lifting of up to twenty pounds and frequent lifting of up to ten pounds.  *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 544 (10th Cir. 1987)  (*Id.* at 43.)  The ALJ also clarified that:

> [Mr. Romero] could perform occasionally bending, squatting, and kneeling.  [He] could not work with ladders or scaffolds or in hazardous work areas.  He could occasionally use foot or leg controls.  He could perform frequent but not constant, gripping or grasping with force.  He also could not work around temperature extremes.

(*Id.*)  At the fourth step, the ALJ determined Mr. Romero was "capable of performing past relevant work as a customer service clerk . . . [because] [that] work did not require the performance of work-related activities precluded by [Mr. Romero's RFC]."  (*Id.* at 51–52.)

The ALJ also made an alternative finding at the fifth step of the evaluation process.  (*Id.* at 52–53.)  He concluded that "considering the [Mr. Romero's] age, education, work experience, and [RFC]," there are jobs that exist in significant numbers in the national economy that Mr. Romero can perform, including production assembly, storage facility rental clerk, and parking lot attendant.  (*Id.* at 53.)

On appeal, Mr. Romero contends that the ALJ's RFC determination is not supported by substantial evidence and the ALJ did not meet his burden at step five of the evaluation process.  The Court addresses each of these contentions in turn.

**A.  MR. ROMERO'S RFC**

1.  Legal Principles

"Residual functional capacity" is defined as what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments; the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *Valdez v. Apfel*, 102 F. Supp. 2d 1203, 1205 (D. Colo. 2000). The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. *Williams*, 844 F.2d at 751–52. The "type of work" is classified as either sedentary, light, medium, heavy, or very heavy. *Id*. To then determine the claimant's "RFC category," the ALJ takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). *Id.*

Importantly, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). And the ALJ, not this Court, resolves conflicting medical opinions. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Zoltanski v. FAA*, 372 F.3d 1195, 1200.

Using a two-step evaluation process, the ALJ must also weigh the claimant's own description or statements about his physical or mental impairments, i.e. his symptoms. SSR 96-7p (S.S.A. July 2, 1996).[1] First, the ALJ must consider whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Id.* Second, the ALJ evaluates whether the claimant's complaints regarding the intensity, persistence, and

---

[1] The Court recognizes that SSR 16-3p has superseded SSR 96-7p, but SSR 16-3p applies only to "determinations and decisions [made] on or after March 28, 2016." SSR 16-3p, 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). Because the ALJ rendered its decision in this case on August 31, 2015, SSR 96-7p applies.

limiting effects of his symptoms are consistent with and supported by the objective medical evidence in the record as a whole. *Id*.; 20 C.F.R. § 404.1529(c)(4). Symptom assessment is "peculiarly the province of the [ALJ], and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

    2. Analysis

Mr. Romero raises numerous arguments to support his assertion that the ALJ's RFC determination is erroneous. Mr. Romero contends (1) the ALJ improperly weighed the 2011 Functional Capacity Evaluation (FCE) of physical therapist Meredith Mueller; (2) "turned a blind eye" to later medical evidence and opinions that demonstrate Mr. Romero's "deteriorating [back] condition; and (3) the ALJ improperly assessed Mr. Romero's daily activities and discounted his claimed symptoms. The Court addresses each contention in turn, ultimately concluding that none of them support reversing the ALJ's decision.

    *a. The 2011 FCE*

The 2011 FCE was conducted nearly two years after Mr. Romero sustained his injuries from the explosion. (Doc. # 10-13 at 680–708.) In pertinent part, Ms. Mueller made various findings with respect to Mr. Romero's dexterity tasks and other physical work limitations, ultimately opining that Mr. Romero could perform light work. (*Id.* at 682.) The ALJ accorded that opinion "significant weight" because it was "largely consistent with Ms. Mueller's findings upon examination" and with Mr. Romero's "activities of daily living during the period at issue." (Doc. # 10-2 at 49.)

The Court finds that the ALJ's assessment is substantially supported. To begin, the FCE specifically reflects that Ms. Mueller observed Mr. Romero:

- lifting "20 lbs frequently from floor to waist" and "from waist to above shoulder";

- "carrying carry 20 lbs for 30 feet";

- sitting for over 2 hours without "any signs of discomfort";

- static standing for up to 45 minutes continuously and dynamic standing for almost 2 hours total with no signs of physical discomfort;

- walking short distances without abnormalities;

- in mild-to-moderate stooping with "no complaints of back pain"; and

- squatting "without difficulty."

(Doc. # 10-3 at 681.)

Mr. Romero was additionally able to:

- "perform fine finger tasks" slowly but with "no complaints of pain";

- participate in a dexterity test "which requires light grasping and handling" without showing any signs of discomfort;

- "perform the pinch grip strength measurement without complaints"; and

- "grasp a pen with only mild modification."

(*Id.*) The FCE also contained the results from several medically objective tests, including the Purdue Pegboard Test, the Minnesota Dexterity Test, and the Valpar 9 Whole Body Range of Motion Test—all of which Mr. Romero "successfully completed" with little complaints of pain. (*Id.* at 688–91.)

Moreover, Mr. Romero's medical records support the ALJ's decision to accord the 2011 FCE significant weight. Between 2009 and 2011, Mr. Romero received little to no treatment for his back. A 2009 lumbar spine x-ray revealed "mild" degenerative issues to the lower spine but "nothing acute." (Doc. # 10-20 at 1133.) Other records reflect that Mr. Romero was experiencing some back pain and difficulty with flexion but nonetheless maintained a full lumbar spine range of motion, and no trouble sitting or standing. (Doc. # 10-23 at 1346, 1373, 1420.) Indeed, although alleging a disability since May 2009, Mr. Romero did not seek help for his back pain until late 2011. (*Id.*)

For his hand injuries, medical records reflect that Mr. Romero has displayed variable effort and ability with tasks requiring his hands. For instance, Mr. Romero occasionally displayed tightness in his hands, decreased joint movement, and some trouble with gripping. (Doc. ## 10-7 at 300; 10-26 at 1670, 1674.) However, he also consistently maintained a normal range of motion, good flexion and extension of his digits, and improved pinch and grip strength in both hands, ranging from anywhere between 54–73 pounds on the left hand and 40–41 pounds on the right. (Doc. ## 10-7 at 52, 266–67, 300; 10-36 at 2431; 10-12 at 630; 10-26 at 1681.)

Mr. Romero nonetheless argues that his worsening back condition after 2011 renders the 2011 FCE inaccurate and contradicted, such that the ALJ should have completely discounted its results. The Court disagrees. To begin, Mr. Romero claims a disability beginning in 2009, so his back condition in 2011 is entirely relevant to the ALJ's inquiry, regardless of what happened thereafter. Moreover, although the records

9

show some worsening of Mr. Romero's back condition after 2011[2], that worsening

condition does not nullify the 2011 FRE.  It is within the ALJ's prerogative to weigh

conflicting medical evidence, and the ALJ is required to consider all the medical

evidence in the record.  *See Trimiar*, 966 F.2d at 1329.  The ALJ therefore weighed the

2011 FRE results *and* the back treatment Mr. Romero sought thereafter.  The ALJ

provided a thorough recitation of Mr. Romero's medical records from before *and after*

2011—highlighting objective medical evidence both favorable and unfavorable to Mr.

Romero and explaining the weight given to each and every medical source opinion.  As

the Court will explain more fully below, that ALJ's assessment of this evidence and Mr.

Romero's overall back condition is supported by substantial evidence in the record.

The Court accordingly finds that the ALJ's decision to accord the FRE "significant

weight" was not erroneous.

### b.  Back Evidence After 2011

Next, the Court addresses Mr. Romero's contention that the ALJ improperly

"turned a blind eye" to his post-2011 back evidence.  Mr. Romero specifically argues

that the ALJ focused only on evidence and opinions that supported an unfavorable

decision, turning a "blind eye" to all other evidence.  (Doc. #14 at 19)  In support of his

argument, Mr. Romero highlights medical opinions and evidence that, he contends,

support a favorable decision.  For example, he emphasizes the treatment notes

between November 2012 and January 2014, wherein his lifting restrictions fluctuated

from an ability to lift 10–15 pounds, then down to 5 pounds, up to 20 pounds, and then

---

[2] The Court discusses Mr. Romero's back records at length below in Part IV.A.2.b.

back down to 10–15 pounds.  (Doc. # 14 at 20.)  Mr. Romero also highlights some

medical records in late 2013 showing that he experienced 8/10 pain, a limited range of

motion, and a positive straight leg raising test.  (*Id.* at 21–22.)  Mr. Romero contends

that, during this time, he often had to lie down for pain relief and required frequent

position changes.  (Doc. # 16 at 3–4.)    Mr. Romero argues that this and other evidence

was erroneously "ignor[ed]" by the ALJ, warranting reversal on appeal.[3]  (*Id.*)

The Court rejects Mr. Romero's argument for three main reasons.  First, the

record does not reflect that the ALJ ignored the evidence that Mr. Romero presently

emphasizes.  The ALJ's denial contains several pages of analysis and explanation with

respect to that evidence, highlighting other evidence that conflicts with it and assessing

all applicable medical opinions.  (Doc. # 46–51.)  Indeed, the ALJ details the weight

given to each medical source and the reasons for said weight.  (*Id.*)

Second, Mr. Romero's contentions amount to little more than a request for this

Court to re-weigh the evidence and resolve conflicting medical opinions differently than

did the ALJ, which this Court may not do.  *See Trimiar*, 966 F.2d at 1329; *see also*

*Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the

not uncommon situation of conflicting medical evidence. The trier of fact has the duty to

resolve that conflict.")  Instead, the Court is tasked only with evaluating the record "to

ascertain whether there is evidence to support the ALJ's decision, regardless of whether

---

[3] Mr. Romero also highlights medical evidence from 2014 and 2015, but those records are
irrelevant.  Indeed, to receive DIB, Mr. Romero had to establish a disability on or before his last
date insured—December 31, 2013.

[the Court] would have reached a different result based on the record." *Ellison*, 929

F.2d at 536.

Third, and finally, substantial medical evidence supports the ALJ's RFC

determination that Mr. Romero is capable of "light work" with various postural and

functional limitations, such as occasional bending, squatting, kneeling, lifting of up to 20

pounds, and use of foot or leg controls. That evidence[4] includes, but is not limited to,

the following opinions:

- October 2011, Dr. Jose Cebrian: Mr. Romero's lumbar "range of motion is

  decreased" but "heel-toe walking is normal[,] . . . [s]traight leg raising is

  negative," and sensory exam was normal. (Doc. # 10-28 at 1834.)

- November 2011, Dr. Lynne Fernandez: "Active range of motion of the back is

  limited" but "[s]traight leg raise is negative. . . . He is able to toe walk, heel

  walk, and squat." (Doc. # 10-36 at 2435–36.)

- May 2012, Dr. Susan Lan: Mr. Romero has "increased paraspinal muscle

  tone, bilateral L4, L5, and S1 regions [and m]ild tenderness over the bilateral

  SI joint regions bilaterally" but "[h]is gait is normal" and he displayed 5/5

  strength in his lower extremities and equal reflexes. Dr. Lan recommended

  "limited lifting, pushing, or pulling up to 20 pounds." (Doc. # 10-20 at 1117.)

---

[4] The Court notes that the Administrative Record in this case is extremely long. Thus, although the Court considered the entire record, it nonetheless highlights only portions, paying particular attention to those records referenced by the ALJ in making its decision as well as those referenced by Mr. Romero and Defendant in developing their arguments.

- August 2012, Michael Granzin, physical therapist: Mr. Romero had "75% full extension, flexion, and side bending." He could also move from sitting to standing "without compensation." (Doc. # 10-16 at 943.)

- November 2012, Dr. Lan: Mr. Romero "has a negative straight leg raise[, and g]ood lumbar range of motion." (Doc. # 10-20 at 1172.)

- November 2012, Lucia London, FNP: Mr. Romero has "some limited range of motion with flexion and twisting to the right" but Mr. Romero "transitions from sitting to standing to walking without difficulty" and his "[m]uscle strength is 5/5 to the right left and 4/5 to the left leg." (Doc. # 10-29 at 1891.)

In late 2012, an MRI revealed "mild to moderate degenerative disk disease" and "central disk bulge/protrusion creating sever bilateral lateral recess stenosis at L4–5 contacting the L5 nerve roots." (Doc. # 10-20 at 1172.) Dr. Lan then recommended a L4 laminectomy, which Mr. Romero underwent in December 2012, with a revision laminectomy in July 2013. After the surgery, medical records reflect that Mr. Romero moved with a normal gait and had near-full or full lower extremity muscle testing. (Doc. ## 10-13 at 713; 10-20 at 1196; 10-29 at 1897.) He could also transition from sitting to standing and toe walk without difficulty, had negative straight leg raise tests, nearly full motor strength in both legs, a full range of motion, and ambulated normally. (Doc. ## 10-29 at 1928; 10-21 at 1235, 1239–42.)

On appeal, Mr. Romero highlights some medical evidence that conflicts with the evidence highlighted above, but the mere presence of a medical conflict is insufficient to support reversal, particularly when the ALJ's conclusion is substantially supported by

the record as a whole. Accordingly, the Court finds that the ALJ did not "turn a blind eye" to Mr. Romero's post-2011 back evidence and perceives no error.

### c. Mr. Romero's Symptoms and Daily Activities

Finally, Mr. Romero objects to the ALJ's assessment of his symptoms and daily activities as related to his RFC. Having thoroughly considered the issue, the Court finds that substantial evidence in the record supports the ALJ's determinations.

Beginning with Mr. Romero's symptoms, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that [Mr. Romero's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In addition, the ALJ concluded:

- "Objective findings regarding grip and pinch strength are not entirely consistent with the Claimant's allegations of dropping objects, having the ability to lift only 10 pounds, and having difficulty picking up coins."

- "After March of 2011, the record does not show that the claimant sought any consistent treatment in regards to his hands or reported deficits in hand function regularly, which is not entirely consistent with this allegations of disabling hand dysfunction."

- "[T]he record as a whole does not fully support the claimant's allegations. As noted, there was minimal treatment for the claimant's back pain until 2012, which is not entirely consistent with the claimant's allegation of disability since May of 2009."

- "[W]hile the claimant testified to using a cane and walker for ambulation, the record does not show that the claimant used such assistive devices prior to the date last insured (see Ex. I8F). No treating sources reported the use of any devices for ambulation during the period at issue, and the claimant did not note the use of such a device in his November of 2013 function report (Ex. 4E/7). The claimant also was found to have a normal gait frequently, and the claimant acknowledged walking about a quarter to half mile at a

time in his function report, supporting the residual functional capacity (Ex. 4E/6; Ex. 4F/9, 35, 127, 134; Ex. 8F/14)."

- "[W]hile the claimant alleged much trouble with sitting, the record does not support this allegation. Treating sources did not find that the claimant had trouble sitting during examinations with any regularity. For instance, in March of 2011, the claimant had no discomfort with sitting or trouble with sitting (Ex. 3F/346). That month, the claimant also discussed his intention to look for work as a shuttle bus driver, and looking for such work is not consistent with the claimant's allegation of only being able to sit for 10 minutes at a time (Ex. 5F/506). The claimant also testified to driving. In addition, the undersigned notes that the record does not show that the claimant reported taking naps or needing to lie down with any regularity, weighing against the credibility of his allegations regarding the need for regular naps and the need to lie down frequently."

(Doc. # 10-2 at 44–48.)

Having thoroughly reviewed these, and other, findings in light of the entire administrative record, the Court declines to disturb the ALJ's assessment of Mr. Romero's symptoms because that assessment is supported by substantial evidence. Indeed, as detailed above and thoroughly reviewed by this Court, the objective medical evidence shows significant inconsistences regarding the intensity, persistence, and limiting effects of Mr. Romero's claimed symptoms.[5] The record shows that, despite alleging debilitating pain, Mr. Romero had full or near full strength in both legs, only slight limitations in his lumbar range of motion, numerous negative straight leg tests, and a normal gait during most of the insured time period. *See Brown v. Bowen*, 801 F.3d 361, 362–63 (10th Cir. 1986) ("To be disabling, pain must be so severe, by itself or

---

[5] The Court notes that in 2011 Dr. Mueller also concluded that "overall test findings, in combination with clinical observations, suggest some minor inconsistency in the reliability/accuracy of [Mr. Romero's] subjective reports of pain/limitation." (Doc. # 10-13 at 706.)

in conjunction with other impairments, as to preclude any substantial gainful employment.").

Although Mr. Romero highlights other medical evidence that supports his claimed symptoms and demonstrates that those symptoms have worsened over time, such evidence is insufficient to support a reversal of the ALJ's well-reasoned and substantially supported decision. Indeed, as mentioned, symptom assessment is "peculiarly the province of the [ALJ], and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz*, 898 F.2d at 777.

Finally, contrary to Mr. Romero's objections, his daily activities, particularly when coupled with the objective medical evidence in the record, also support the ALJ's RFC determination that he is capable of light work. In the unfavorable decision, the ALJ concluded as follows:

> The undersigned further notes that the claimant's allegations regarding his activities of daily living and trouble with gripping are not entirely consistent with the claimant's statements in the record. While the claimant testified that he did not perform any household chores or yard work and dropped objects regularly, in the record, the claimant acknowledged performing many tasks requiring manipulation, weighing against the credibility of the claimant's testimony. For instance, in June of 2010, the claimant acknowledged using his right hand a lot at home for such tasks as planting (Ex. 3F/203) In August of 2011, the claimant reported cleaning dryer vents (Ex. 5F/554). Later, in March of 2012, the claimant acknowledged doing light chores and cleaning the house regularly (Ex. 14F/4). The claimant also acknowledged the ability to lift his 25-pound granddaughter (Ex. 11F/8). Moreover, in his November of 2013 function report, the claimant noted making his bed, doing light dusting, making simple meals, and doing dishes (Ex. 4E/3). He also acknowledged

shopping in stores for food (Ex. 4E/4).  Such activities of daily living help support the [RFC], including the manipulative limitations.

(Doc. # 10-2 at 48.)  Having thoroughly reviewed the record, the Court perceives no error.  Between 2010 and 2011, Mr. Romero reported using "his hand a lot at home," planting in the garden, lifting his 25-pound granddaughter, and cleaning the house. (Doc ## 10-6 at at 199–200; 10-11 at 538; 10-28 at 1798.)  He also stated that he could lift 25 pounds overhead, carry at least 10 pounds, pull a trash can through the driveway, and do light chores.  (Doc. ## 10-36 at 2407; 10-37 at 2448.)  Although his activities declined in later years, he could still make his bed, dust the house, make simple sandwiches, do the dishes, drive a car, run other errands solo, and shop for groceries with his wife.  (Doc. ## 10-6 at 198–200; 10-37 at 2448.)  Although these tasks may not support medium or heavy work, they nonetheless support an RFC to perform light work with occasional bending and lifting of up to 20 pounds.  Moreover, despite Mr. Romero's assertions, the ALJ did not rely on Mr. Romero's daily activities or abilities as the sole basis for assessing his symptoms or evaluating his RFC.  Nor does it appear that the ALJ based his evaluation solely on Mr. Romero's activities from early 2011, as Mr. Romero contends.  The ALJ's decision was thorough and clearly demonstrates that he considered all of Mr. Romero's daily activities (and his own pain assessment) in light of the entire medical record, as the regulations require.  *See Bainbridge v. Colvin*, 618 F. App'x 384, 388 (10th Cir. 2015).

Accordingly, the Court finds no error in the ALJ's assessment of Mr. Romero's symptoms or daily activities.

**B. STEP FIVE**

Mr. Romero also contends that reversal is warranted because the ALJ erred at step five in the evaluation process when he failed to "include in the hypothetical upper extremity impairments." (Doc. # 14 at 28.) The Court disagrees, finding neither reversal nor remand appropriate in this case.

The ALJ's step five analysis was merely an alternative conclusion. At step four, the ALJ found Mr. Romero capable of performing past relevant work as a customer service clerk, and therefore, not disabled. 20 C.F.R. § 404.1520(e). Mr. Romero does not challenge that finding. *See Atwood v. Union Carbide Corp.*, 847 F.2d 278, 280 (5th Cir. 1988) ("[I]ssues not briefed, or set forth in the list of issues presented, are waived.").

Because a finding that a claimant is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis, the ALJ's conclusion at step five was inconsequential and this Court need not review it. *See Casias*, 933 F. 2d at 801. In other words, even if this Court were to find an error at step five, the Court would still affirm the ALJ's decision at step four, foreclosing Mr. Romero's success on appeal. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (If an unchallenged finding "is, by itself, a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed, regardless of the merit of his arguments relating to [other steps].").

## V. CONCLUSION

For the foregoing reasons, the decision of the ALJ denying Plaintiff Eugene Romero's request for disability insurance benefits is AFFIRMED.

DATED: July 19, 2018                    BY THE COURT:

Christine M Arguello

_____
CHRISTINE M. ARGUELLO
United States District Judge